UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00169-LLK

JAMES DAVID YOUNG                                                                                          PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security                                             DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for social security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Docket Number ("DN") 15 and 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 9].

The administrative record contains evidence that Plaintiff suffers from cervical spondylosis with chronic bilateral radiculopathy and is medically required use a left-arm Canadian crutch for ambulation and/or balance, both of which would be expected to affect his ability to use his arms and hands as required to perform light work. Because the Administrative Law Judge's ("ALJ's") findings in support of the ALJ's conclusion that Plaintiff has a residual functional capacity ("RFC") to perform light work are insufficient to permit meaningful review, the Court will REMAND this matter to the Commissioner for a new decision.

Discussion

The ALJ found that Plaintiff suffers from severe, or vocationally significant, impairments, including being status post-cervical fusion surgery (with a steel plate in the neck) and spine disorders with compound fracture of the lower back. [DN 8-2 at 15]. Additionally, Plaintiff underwent surgery to correct a chronic deformity of the right shoulder acromioclavicular (AC) joint. *Id.* at 20. The Department of Veterans Affairs ("VA") adjudicated Plaintiff to be a hundred percent disabled effective July 5, 2018 due

1

to service-connected degenerative disc disease and upper and lower extremity radiculopathies. [DN 15 at 2].

The ALJ found that, during the closed period from December 20, 2017 (when Plaintiff alleges he became disabled) to December 31, 2018 (when his insured status expired), Plaintiff retained the ability to perform a significant number of unskilled, light jobs in the national economy such as salvage bagger and collator operator. [DN 8-2 at 17, 23].

By definition, light work requires a good ability to stand/walk and good use of the upper extremities. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5-6. Specifically, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. *Id.* Additionally, unskilled, light jobs generally require gross use of the arms and hands to grasp, hold, and turn objects (but do not require fine use of the fingers, which is associated with sedentary work). *Id.* at *6; SSR 83-14, 1983 WL 31254, at *4.

In addition to the foregoing definitional requirements of unskilled, light work, the ALJ found that Plaintiff could "frequently kneel, crouch, and climb ramps and stairs [and] occasionally stoop [but] should never reach overhead with his bilateral upper extremities [and] should avoid even moderate exposure to vibration." [DN 8-2 at 17]. The administrative record contains evidence that Plaintiff suffers from cervical spondylosis with chronic bilateral radiculopathy and is medically required to use a left-arm crutch. In light of this evidence, the ALJ's implicit finding that Plaintiff could use his arms and hands sufficiently to perform light work is not adequately supported.

The ALJ acknowledged the presence of radiculopathy and other impairments affecting Plaintiff's ability to use his upper extremities:

> The evidence shows that the claimant had a cervical fusion in 2016, but reported continued neck pain and arm radiculopathy through 2017…. In December 2017, a nerve conduction study showed the claimant to have bilateral cervical radiculopathies. … A January 2018 magnetic resonance image (MRI) of the claimant's cervical spine showed a mild broad based disc bulge at C3-4 with resulting mild bilateral narrowing of the intervertebral foramina. The same month, the claimant reported that his TENS unit was not helping with the pain, and physical therapy the prior year had

2

> made the pain even worse. A March 2018 appointment showed decreased cervical range of motion, along with tenderness in his cervical area. An assessment of cervical spondylosis with radiculopathy was noted.
>
> In June 2018, the claimant's physician noted that the claimant had no problems with his grip and no muscle weakness. An examination noted limited neck mobility in all directions, trapezius tightness, and mild rhomboid tenderness. Appointments in October 2018 and January 2019 revealed no edema. Furthermore, the record contains evidence that the claimant had trigger point injections in 2018 in an attempt to relieve the pain, but that they reportedly did not help.

[DN 8-2 at 19]. Yet the ALJ implicitly found that Plaintiff can use his arms and hands sufficiently to perform light work notwithstanding the fact that he "reported continued neck pan and arm radiculopathy" after his cervical fusion in 2016 and the fact that "in December 2017, a nerve conduction study [NCS] showed the claimant to have bilateral cervical radiculopathies." *Id.*

In support of discounting any significant inability to use his upper extremities, the ALJ noted that in February 2018 "the claimant's physician reported that these [radicular and December 2017 NCS] findings are expected in someone who has had a cervical fusion suggesting nothing significantly abnormal or unexpected." *Id.* referencing DN 8-7 at 49. In February 2018, anesthesiologist / surgical after-care specialist Richard J. George, M.D., determined that Plaintiff would be "discharge[ed] back to the primary care team for continued ongoing conservative treatment" because, among other things, the chronic bilateral C5-C7 radiculopathy and December 2017 NCS findings are "basically what would be expected from a patient who had a C4-C7 fusion." [DN 8-7 at 49]. An impairment is not insignificant simply because it was medically "expected," nor is there a requirement that, to be disabling, a condition must result in limitations in excess of what was medically predicted.

An ALJ's finding is not adequately supported if "the reasons given by the [ALJ] do not build an accurate and logical bridge between the evidence and the result." *Mobley v. Comm'r of Soc. Sec.*, No. 1:19-CV-02777, 2020 WL 4273560, at *10 (N.D. Ohio July 24, 2020) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (ALJ's findings must be sufficient to "permit meaningful review"). Dr. George's finding that Plaintiff's radicular and NCS

3

findings were medically "expected" did not provide an "accurate and logical bridge" to a conclusion that Plaintiff can use his arms and hands sufficiently to perform light work. *Sarchet*, 78 F.3d at 307. Plaintiff persuasively argues that the ALJ's decision reflects a misunderstanding of "the importance of the [December 2017] NCS [nerve conduction study] findings" and his radicular symptoms. [DN 15 at 8].

Plaintiff also persuasively argues that the ALJ's decision reflects a misunderstanding of his use of a hand-held assistive device. *Id.* At the April 2019 administrative hearing, the ALJ observed that Plaintiff was using a left-arm Canadian crutch. [DN 8-2 at 45]. Canadian crutches, or forearm crutches, are designed to be weight bearing at the forearm area rather than at the shoulder area as with axilla, or underarm, crutches. *Blodgett v. Comm'r*, No. CIV. 08-5038-KES, 2009 WL 2410968, at *17 (D.S.D. Aug. 4, 2009). Plaintiff testified that his treating physician prescribed the crutch "over a year" ago due to pain on the right side and falls and that he uses it "all the time." *Id.* at 45, 49. The VE testified that Plaintiff would be rendered incapable of perform the unskilled, light bagger and collator operator jobs previously identified if he must "use a crutch in his left hand at all times when standing and walking" because the jobs "depend on good bilateral manual dexterity which he would not have using [a crutch because crutch use] would reduce him to a one-armed worker." *Id.* at 54.

Consistent with Plaintiff's crutch use, the ALJ acknowledged that Plaintiff suffers from "chronic compression fracture of L2 and L1" and "persistent compression deformity of L2 and minimally T12." *Id.* at 20. Yet the ALJ implicitly found that Plaintiff is not medically required to use a held-held assistive device, in part, because "[i]n January 2018, it was noted that the claimant was issued a cane, but he reported that it did not help much and that he used it only three days per week." *Id.* at 18 referencing DN 8-7 at 75. In January 2018, Judith Bishop, R.N., noted that Plaintiff uses a TENS unit and a Theracane on Mondays, Wednesdays, and Fridays. [DN 8-7 at 75]. However, "patient states [the Theracane] doesn't help much." *Id.* A Theracane is a "tool used to massage trigger points." *Groskreutz v. Comm'r*, 108 F. App'x 412, 414

4

(7th Cir. 2004). Plaintiff persuasively argues that the ALJ erred in failing to "discern the difference between a Theracane and an assistive walking device." [DN 15 at 8].

Because Dr. George's finding that Plaintiff's radiculopathy and NCS findings were medically "expected" did not provide an "accurate and logical bridge," *Sarchet*, 78 F.3d at 307, to a conclusion that Plaintiff can use his arms and hands sufficiently to perform light work, and because RN Bishop's note that Plaintiff used "a cane" only three days a week did not support a conclusion that Plaintiff is not medically required to use a crutch, the ALJ's findings are insufficient to "permit meaningful review." *Wilson*, 378 F.3d at 544.

The remaining question is the appropriate remedy. When a court finds that the ALJ's decision is not supported by substantial evidence, it may award benefits (as opposed to remanding for a new decision) "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Wiser v. Comm'r*, 627 F. App'x 523, 526 (6th Cir. 2015) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

For the reasons indicated above, the ALJ's finding that Plaintiff retains the ability to perform light work is not supported by substantial evidence. If Plaintiff is limited to sedentary work, an ultimate finding of disability is required pursuant to a direct application of Rule 201.14 of Appendix 2 of the regulations. *Id.* at 22, 36. The administrative record, however, does not adequately establish that Plaintiff is limited to sedentary work. The record reflects only that ALJ's findings in support of a conclusion that Plaintiff can perform light work are insufficient to permit meaningful review.

**Order**

Because the Administrative Law Judge's ("ALJ's") findings in support of the ALJ's conclusion that Plaintiff has a residual functional capacity ("RFC") to perform light work are insufficient to permit meaningful review, this matter is hereby REMANDED to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

August 18, 2020

Lanny King, Magistrate Judge
United States District Court